## KING and others *vs.* STRONG and others.

Where a testatrix, whose only son and heir was an idiot and had a large property in the hands of his committee, the income of which was more than sufficient for his support, bequeathed $1000 for the use and benefit of such son, to be appropriated at the discretion of her executors, and directed that so much of that legacy as her executors should not appropriate for his use during his life should at his decease go to the Foreign Mission School, a supposed charitable institution which in fact had no existence ; and the testatrix, after making a specific devise of a part of her real estate and giving specific and pecuniary legacies to a large amount, directed her executors to sell the real property not specifically devised, and bequeathed the proceeds and all her residuary estate, to the Home Missionary Society, in case it did not exceed $1000, and the residue beyond that sum to the children of her niece : *Held*, that the committee of the idiot were not entitled to have the $1000 legacy applied to his general support while the income of his estate was more than sufficient for that purpose ; and that the executors were only bound to apply it if it should become necessary in consequence of a loss of his property. *Held also*, that the limitation over to the supposed charitable institution having failed, the unexpended balance of this legacy would fall into the general residue of the personal estate of the testatrix, and would belong to her residuary legatees.

A general residuary bequest of personal estate, or of chattels real carries to the residuary legatee, not only such estate and such interests therein as the testator did not attempt to dispose of by his will, but also such as, by lapse or otherwise, have not in fact been effectually disposed of by him.

Where the will of the testator is so ambiguous as to render it proper for the executor to take the direction of the court of chancery as to the construction of its provisions, the costs of the necessary parties to the litigation is a proper charge upon the estate. And the costs in such cases are generally charged upon the residuary estate of the testator ; but the rule is not inflexible.

An infant, or a lunatic, or an idiot, who is made a party to a suit to settle the construction of a will, ought not to be left to pay his own costs out of property not derived under the will, or from the testator.

April 6.     THIS was an appeal by the committee of **J. H. Wood-hull** an idiot, from a decree of the vice chancellor of the

first circuit. The bill was filed by the residuary legatees of H. Woodhull, the mother of the idiot, for an account and settlement of the estate of the decedent, and to obtain a judicial construction of her will as to two of the legacies therein mentioned. The testatrix died subsequent to the revised statutes seized of a considerable real estate and a large personal property, leaving the idiot her only heir at law. By the first clause of her will the testatrix made a bequest of one of the legacies in question in the following words : " I give and bequeath the sum of $1000 for the use and benefit of my unfortunate son J. H. Woodhull, to be appropriated at the discretion of my executors herein after named, whom I hereby direct to take the especial care and charge of my said son during his life ; and so much of the said sum of $1000 as my said executors shall not appropriate for the use or benefit of my said son during his life, I give at his decease to the Foreign Mission School for the religious education of foreign young men." And after making a specific devise of a part of her real estate and giving some specific legacies, and pecuniary legacies to the amount of ten or twelve thousand dollars to her collateral relatives, the testatrix directed her executors to sell the real and personal estate not specifically devised or bequeathed, and to collect in the debts, and out of the proceeds thereof to pay all her just debts and the several legacies in her will before bequeathed. The residue thereof, provided the same did not exceed $1000, she bequeathed to the Home Missionary Society, to be paid upon the receipt of the treasurer of the said society for the time being. And the remainder of her estate, after the payment of the $1000 to such missionary society, she gave to the children of her niece Eliza King, the complainants in this cause.

The bill alleged that at the date of the will and at the death of the testatrix, and also at the time of filing such bill, Knowles Taylor was the treasurer of the Home Missionary Society mentioned in the will ; which society was a mere voluntary association not incorporated, and the members of which were constantly changing. The com-

plainants therefore insisted that the bequest to such society was void in law, and that the same belonged to the complainants as the residuary legatees of the testatrix. The bill also stated that there was no such school as the Foreign Mission School for the religious education of foreign young men to whom the residuary interest in the $1000 legacy mentioned in the first clause of the will was devised; that the idiot son of the testatrix, to whom the primary interest in that legacy was bequeathed, at the time of making of the will and for a long time before and at the time of filing the bill, was possessed of a large real and personal estate, under the care of his committee appointed by this court; the income of which estate was much more than was necessary to support the idiot in the most liberal manner. The complainants, therefore, insisted that it was not the intention of the testatrix to give the $1000 mentioned in the first clause of the will to her son as a legacy for his ordinary support and maintenance, as was claimed by his committee; but that she only intended to place the amount of such legacy in the hands of her executors to be employed by them if it should become necessary, or if they should think fit, in promoting the comfort of the idiot. And that if the executors, in the reasonable exercise of their discretionary power should not think proper to apply the amount of the legacy for the support of the idiot, the complainants were entitled to the same, or to so much thereof as should not be applied for his benefit, under the residuary devise of the will; the bequest over to the Foreign Mission School being void. The treasurer of the Home Missionary Society and the idiot and his committee were made parties, with the executors, for the purpose of settling the questions in relation to these legacies and the residuary bequest.

The cause was heard upon pleadings and proofs as to all the defendants. The vice chancellor decided and decreed that the legacy to the Home Missionary Society, which was a voluntary charitable association of which the testatrix had long been a life member and the objects of which society were well known to her, was a valid bequest; and

that it must be paid to the treasurer for the use of the society.  As to the other legacy he decided and decreed that it did not vest in the idiot son of the testatrix as an absolute legacy ; that it was only to be appropriated in the discretion of her executors for his benefit during his life, not for his ordinary support, which his committee were bound to furnish and provide for him out of his own estate, but in the exercise of that special care and charge of him which the executors were bound to take by the will ; that the legacy should not be paid to the committee, but should be retained by the executors during his life, subject to the discretionary power given to the executors ; that it was the duty of the executors to invest the legacy so that it might be productive ; and if the legacy and its accumulations, or any part thereof, should, at the death of the idiot remain unexpended, it should be paid to the complainants as the residuary legatees.   He also decreed that the committee of the idiot should pay their own costs out of his estate ; and that the complainants and the executors should be paid their costs out of the estate of the testatrix.

The committee of the idiot appealed from so much of the decree as related to the $1000 legacy mentioned in the first clause of the will, and from so much as required them to bear their own costs ; the appellants claiming that the legacy should be applied to the general support of the idiot, and that if any thing remained at his death it would belong to him as the heir at law and next of kin of the testatrix. They also claimed that the costs of the committee should have been charged upon the residuary estate of the decedent.

*M. S. Bidwell,* for the appellants.

*D. Lord, Jr.* for the respondents.

THE CHANCELLOR.   The legacies in this case were payable out of a mixed fund, consisting of personal property and of the proceeds of real estate.   It is settled that a general residuary bequest of personal property, or of chat-

1841.

King
v.
Strong.

tels real, carries to the residuary legatees not only such estate and such interests therein as the testator did not attempt to dispose of by other provisions of his will, but every part of his property which, by lapse or otherwise, is not effectually bequeathed and disposed of to others. And it is equally well settled that the personal estate of the testator, unless it is exempted by the will, is the primary fund for the payment of legacies, although such legacies are charged also upon the real estate. Upon the argument of this appeal I understood it to be admitted that the personal estate of the testatrix, not specifically bequeathed, was sufficient to pay all the debts and legacies. In that case, if the unexpended balance of the legacy mentioned in the first clause of the will is lapsed or void, because there is no such society in existence as that described by the testatrix as the object of her bounty, it necessarily follows that such balance goes to the residuary legatees, as an interest in the personal estate not effectually disposed of to others. Had the personal estate been deficient, so that a part of the failing bequest was the proceeds of real estate, the idiot as heir at law, would probably have been entitled to a part thereof, as an interest in real estate not effectually disposed of by the will. (*See Eyre* v. *Marsden*, 2 *Keen's Rep.* 564. *Gibbs* v. *Rumsey*, 2 *Ves. & Bea.* 294. *Van Kleeck* v. *The Reformed Dutch Church*, 6 *Paige's Rep.* 600. 20 *Wend.* 458, *S. C. Gott* v. *Cook*, 7 *Paige's Rep.* 542.) The only real question upon this part of the will now is, whether the testatrix intended to charge the general support of her idiot son upon this legacy ?

Considering the circumstances in which her son was placed at the time of making the will, it is difficult for the mind to arrive at any satisfactory conclusion as to what was the real object of the testatrix in making this bequest. Her son had then an estate worth upwards of forty thousand dollars, producing an annual income of treble what was necessary for his support. She could not therefore have contemplated the application of this legacy of $1000 as a fund for his general support for life, and have anticipated,

as she did, that there would be a surplus left for the Foreign Mission School to which that surplus was bequeathed. And I think there can be no doubt that she intended this bequest of the surplus to be effectual; although she did not define the object of her intended bounty in such a manner as to enable the court to carry her benevolent and pious intentions into effect, as she has done in relation to the other benevolent object mentioned in her will. She probably intended this bequest for the benefit of some of the foreign mission schools under the care of our American missionaries in heathen lands; and had gotten the impression that one of those schools had been established for the particular object specified in the will. I am therefore of the opinion that the aid to this supposed mission school was the principal object of giving this legacy. And that the vice chancellor is right in supposing that a mother's feelings, which would not allow her entirely to overlook her unfortunate and only child in her will although she knew he had already more than sufficient to supply all his wants, induced her to connect this nominal bequest of an interest in the legacy with the ultimate gift over of what was not wanted for his use to the charitable object of her intended bounty. The case is somewhat different from that of *Ashley*, (1 *Russ. & Myl. Rep.* 371.) That was a case of lunacy, in which there was a possibility of recovery; so that the application of the bequest for the support of one daughter would, in the event of such recovery, be most beneficial for her. But in the case of an idiot, where there is no possibility of his being benefitted by the increase of his property beyond what is sufficient to ensure him an ample support for life, the principle upon which Sir John Leach acted in the case of *Foljambe* v. *Willoughby*, (2 *Sim & Stu. Rep.* 165,) does not apply. It is evident, in the present case, that the testatrix could not have intended to give this legacy for general support, merely to increase the estate of her unfortunate child for the benefit of his heirs and next of kin, who were strangers to her blood. For she had entirely passed them over in the distribution of her

ample estate ; which she had given to even remote collateral relatives of her own, because he did not need it and could not enjoy it.   This bequest is a beneficial legacy to the idiot to a certain extent ; as he is entitled to a support out of the fund if by the loss of his other property by any unforseen occurence such an application of the capital of the legacy should at any future time become necessary. And so far the power to the executors to apply the legacy, or a portion of it, for his use and benefit, is a trust power, which is imperative and may be enforced by this court.

I think, however, the vice chancellor erred in refusing the committee of the lunatic the costs to which his estate had been subjected by this suit.   It was the misfortune of the complainants, and not the fault of the idiot or his committee, that the testatrix had made her will in such a form that the executors could not safely proceed and settle the estate without taking the opinion of the court. The idiot and his committee not being authorized to relinquish his right to this legacy, if he had any, they were compelled to put in their answer, and submit the rights of the lunatic, under the will, to the decision of the court. And as they were necessary parties, and did not come into this court as volunteers, it seems to be a case falling within the general rule, that where the will of the testator is so ambiguously expressed as to render it proper for the executor to take the direction of the court, the necessary costs of the litigation to settle the construction of the will should be paid out of the fund.   (*Rogers* v. *Ross*, 4 *John. Ch. Rep.* 608.)   In such cases the court generally charges the costs of all necessary parties upon the residuary estate. It seems, however, that the rule is not inflexible ; as the court sometimes apportions the costs among the owners of the different interests in litigation, according to equity. (*See Eyre* v. *Marsden*, 4 *Myl. & Craig's Rep.* 231, *and cases there referred to ; Mitchell* v. *Blain*, 5 *Paige's Rep.* 588.)   But I have not been able to find any case in which the costs of an infant, or of a lunatic, or an idiot, who had been made a party defendant in such a suit, have been left

to be borne by his own estate, not derived under the will, nor from the testator.

It was not necessary to charge the costs upon that part of the residuary fund which the testatrix unquestionably intended should go to the complainants. The fund in question between the complainants and the committee was one which, in all human probability, will never be wanted for the use of the idiot, and must eventually fall into the general residue because it cannot go to the charity which the testatrix had in her contemplation. That fund seems therefore to be the most appropriate to bear the costs of the committee of the idiot. And if the question was properly before me on this appeal, I might also direct the costs of the complainants to be paid out of the same fund.

That part of the decree which directs the estate of the idiot to bear the costs of his committee in this suit must be reversed. And the decree must direct the taxable costs of the committee, in the court below, to be paid out of the interest or income of the $1000 legacy mentioned in the first clause of the will; and the residue of the decree appealed from must be affirmed.

Each party having succeeded in part, in this court, it seems to be a proper case to leave the respective parties to bear their own costs upon the appeal. The proceedings are to be remitted to the vice chancellor.