NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
May, 1881.

## KLEIN v. HAYCK.

*In the matter of the accounting of* FRANCIS HAYCK *and*
MONMOUTH B. WILSON, *executors, etc., of* CHARLES
KLEIN, *deceased.*

The testator was divorced from his wife in 1857, for adultery with N., and
forbidden to remarry. From 1857, until his death in 1879, he cohabited
with N., as his wife, without a marriage. By his will, he gave to his
"beloved wife," N., all his household furniture, plate, etc., and a life
annuity of $1,000, adding "the above provisions in favor of my wife
to be in lieu of dower." Payment of the annuity "in lieu of dower,"
was opposed by those interested in the residuary estate, on the ground
that it was void. *Held,*

1. That the misdescription of the legatee as testator's wife, did not avoid
the legacy, as there was no ambiguity in respect to the person intended,
and no fraud was practiced on the testator.

2. That the expressed consideration, "in lieu of dower," though untrue
and impossible, did not avoid the legacy, since no consideration was
necessary to its validity.

MOTION by executors to confirm the referee's report,
on their accounting; opposed by the residuary devisees
and legatees, the two sons of decedent.

Decedent died in March, 1879. In April, 1852, he
married one Charlotte Koch, who in 1857 obtained in the
supreme court a decree of divorce from him, on the
ground of his adultery with one Maria Naumann, dis-
solving the marriage, and forbidding his marrying again.
From the date of the decree of divorce, to his death, de-
cedent cohabited with said Maria as his wife, and in his
will he referred to her as such, though it was admitted
that they were never formally married, nor was a com-
mon law marriage claimed.

The will provided as follows :

"*Second.* I give and bequeath to my beloved wife, Maria Klein (nee Naumann), all my household furniture, linen, books, plate, cutlery, china and ornaments, her heirs and assigns forever.

"*Third.* I also will and direct that the sum of $1,000, each and every year from the time of my decease, be paid to my said wife in half-yearly installments, for her use and support during the term of her natural life.

"*Fourth.* The above provisions in favor of my wife to be in lieu of dower."

The referee found that decedent intended that the several provisions in his will, in favor of said Maria Naumann, should be for her sole individual benefit, and that the several legacies to her were legal and valid, and that a payment of $50 to her, "on account of her legacy of $1,000 per annum, was legally and properly made."

The fourth exception by contestants was to the finding that the executors were entitled to a decree herein finally settling their account as filed by them.

On June 6, 1879, contestants served notice upon the executors, of advice by counsel that said Maria was not the lawful widow of decedent, and was not entitled to dower ; that the bequests in lieu of dower were void, and that they are entitled to the whole of the estate, excepting certain specific bequests ; and that they make no payments to said Maria Naumann.

The estate consisted principally of real property.

ALLEN, TALMAGE & ALLEN, *for executors.*

F. F. VAN DERVEER, *for contestants.*

THE SURROGATE.—The fourth exception, so far as it

relates to the testator's holding out Maria Naumann as his wife, to the world, and that the provisions in the will, and such holding out, were inconsistent with the theory that he was merely buying her dower right, does not seem to be material in the determination of this motion, provided it shall be adjudged that the legacy is valid, notwithstanding the legatee is denominated the testator's wife, and the legacy is given in lieu of dower ; which latter questions, raised by the same exception, I proceed to consider.

In 1 *Roper on Legacies*, 169, it is stated, as a settled rule, that where the description of a legatee is erroneous, the error not occasioned by any fraud practiced upon the testator, and there is no doubt as to the person who was intended to be described, the mistake will not disappoint the bequest.

In Smith *v.* Smith (4 *Paige*, 271), it was held that a mere misdescription of a legatee did not render a legacy void, unless the ambiguity was such as to render it impossible, either from the will or otherwise, to ascertain who was intended as the object of the testator's bounty.

*Jarman on Wills* (vol. 1, page 330), states the rule to be that it is sufficient that the devisee or legatee is so designated as to be distinguished from every other person.

It is conceded, in this case, that the legacies claimed by Maria were intended for her, and that the only misdescription is in denominating her the testator's wife, when it appears that she was not, though he cohabited with her as such. Hence it is entirely clear that, but for the legacies being expressed as given in lieu of dower, she would be entitled to them, as it is not pretended that

the testator was fraudulently imposed upon by her, but clearly proved that he voluntarily cohabited with her, with a full knowledge of all the facts.

In Giles *v.* Giles (1 *Keen*, 685), it was held that a false character, attributed by a testator to a legatee, would not affect the validity of the legacy, unless the false character had been acquired by a fraud which had deceived the testator ; and that, where the testator and legatee had a common knowledge of an immoral or criminal act by which the legatee had acquired the false character, the rights of the legatee as such would not be affected,—it being no part of the duty of courts of equity to punish parties for immoral conduct, by depriving them of their civil rights.

The numerous authorities cited by counsel for the contestants, to the point that a widow, accepting a pecuniary provision in lieu of dower, is considered a purchaser for value, and the dower interest surrendered constitutes the consideration for the purchase, cannot be controverted, but indisputably state the true principle. But I am of the opinion that he seeks to deduce therefrom an erroneous conclusion in this case,—that the legacies are without consideration, because the legatee had no claim to dower, and therefore void.

When it is conceded, as it must be, that, but for the statement of that alleged consideration, the legacies would be valid, as no consideration was necessary to their validity, I am of the opinion that the stating of an untrue or impossible consideration does not affect their validity, for the reason that the testator knew that the decedent was not his wife, and will be presumed to know the effect of their unlawful cohabitation,—that the legatee

had no legal claim upon his estate for dower ; particularly as it is not pretended that he was deceived by her into assuming any such claim.   This exception should therefore be overruled.

Ordered accordingly.

———————————————

NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.— June, 1881.

## GREER v. GREER.

*In the matter of the accounting of* GEORGE B. GREER, *trustee of* JULIA GREER, *under the will of* GEORGE GREER, *deceased.*

The testator, by his will, created a trust for his daughter, directing the . trustee to hold the share of the estate belonging to her; to pay to her, until her majority, rents and income sufficient for her support and education; all the rents and income thereafter, until she reached twenty-four years, and then the principal and accumulations.   He further directed the trustee to deduct and retain "out of such rents, profits, interest, . and income," while he held the share, " all proper and reasonable expenses and charges, in and for the care and keeping of the same, the renting, investing, and re-investing thereof," all taxes, etc., "and the proper expenses and charges of collecting and applying such income." The trustee claimed that the words quoted were a provision for com pensation in lieu of commissions.   *Held,*
1. That the words " expenses and charges," etc., referred not to compensation of the trustee, but to necessary disbursements in administration, and imported an intent that the daughter was to be supported out of the net income of the trust fund.
2. That the trustee was only entitled to commissions under the statute.
The rule for computing trustee's commissions, in such a case,—stated.

APPLICATION for the settlement of a decree on the final accounting of a testamentary trustee.

The trustee, on the final settlement of his account, in

1872, as executor, etc., of his father, George Greer, accounted for $204,951.60, as principal of said trust, and was directed to retain the same. Since such accounting he had received, in income, $170,583.22, paid out $61,215.07, and invested the balance, leaving in his hands $314,319.75. As trustee, he claimed the right to charge the fund with the value of his services in the administration of the trust, instead of the usual commissions, under the provisions of the testator's will creating the trust, by which said George B. was to hold the share of the estate belonging to Julia, to pay the rents and income necessary, in his discretion, for her education, support and maintenance, until she should become twenty-one years old ; then the whole rents and income to her use until she should be twenty-four years old ; then to assign and pay over the principal and all accumulations to her ; "but always deducting and retaining out of such rents, profits, interest and income, while this part or share is held or retained by the said George B.; as trustee as aforesaid, all proper and reasonable expenses and charges, in and for the care and keeping of the same, the renting, investing and re-investing thereof, all taxes and assessments that may be imposed thereon, and the proper expenses and charges of collecting and applying such income."